**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **8:08CR427** |
| | ) | |
| **vs.** | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **ROYAL J. JACKSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on the defendant Royal Jackson's (Jackson) motion to suppress (Filing No. 25). Jackson is charged in the Indictment with possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count I), and criminal forfeiture for the firearm under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c) (Count 2). See Filing No. 1. Jackson seeks suppression of any evidence found as a result of the stop and warrantless search his vehicle on October 1, 2008. See Filing No. 25.

On February 24, 2009, the court held an evidentiary hearing on the motion. Jackson was present with his counsel, William F. McGinn. Assistant United States Attorney Frederick D. Franklin represented the United States. During the hearing, the court heard the testimony of Omaha Police Department (OPD) officers Patrick Acquazzino (Officer Acquazzino) and Billie Jo Ceglar (Officer Ceglar). No documentary evidence was received. A transcript (TR.) of the hearing was filed on March 3, 2009, whereupon the motion was deemed submitted. See Filing No. 36.

**FINDINGS OF FACT**

Officer Acquazzino has been a police officer for the City of Omaha for approximately three years (TR. 3). Officer Acquazzino is a patrol officer who responds to 911 calls and makes traffic stops, among other things. (TR. 3-4). On October 1, 2008, around 3:30 a.m., Officer Acquazzino was patrolling the area north of Dodge Street and west of 72nd Street in a police cruiser (TR. 3-4). At that time, Officer Acquazzino saw a brown Chevy Caprice

traveling westbound on Blondo Street as he (Officer Acquazzino) was leaving a neighborhood (TR. 5). The Caprice came to Officer Acquazzino's attention because it did not have license plates (TR. 4-5). Officer Acquazzino saw the vehicle had an "in-transit" notice in the back of the vehicle, but did not seen one in the front (TR. 13). Officer Acquazzino pulled in behind the Caprice and initiated a traffic stop (TR. 5). The Caprice stopped on 81st Street just north of Blondo Street (TR. 5).

Officer Acquazzino approached the vehicle on the passenger side and made contact with the driver, identified as Jackson (TR. 5). In addition to the driver, there was a male occupant in the front passenger seat in the vehicle (TR. 6, 11). Jackson gave Officer Acquazzino his driver's license and paperwork associated with the Caprice and stated he (Jackson) purchased the vehicle on September 29, 2008 (TR. 5, 12). Jackson had an unsigned title for the vehicle, but did not have a bill of sale (TR. 12-13). Officer Acquazzino smelled the odor of marijuana in the vehicle, but returned to the cruiser with the paperwork and called for back-up officers (TR. 5). Officer Acquazzino believed the odor of marijuana was consistent with the driver or passenger having possessed or consumed marijuana about the same time as the traffic stop (TR. 12). Officer Acquazzino has been involved in approximately 60-75 incidents where he smelled marijuana and found marijuana in vehicles, leading to arrests (TR. 13).

Within five minutes of the call, Officers Ceglar and Wheatley arrived at the site of the traffic stop in two separate vehicles (TR. 6-7, 16). Officer Ceglar has been a police officer for the City of Omaha for approximately four and one-half years (TR. 15). Officer Acquazzino informed the other officers about the odor of marijuana and his intent to remove the occupants from the vehicle to conduct a search (TR. 7, 16). Officers Acquazzino and Wheatley approached the driver's side, while Officer Ceglar approached the passenger side of the vehicle (TR. 7). Officer Acquazzino asked Jackson to step out of the vehicle (TR. 7). Officer Acquazzino explained to Jackson that he detected the odor of marijuana in the vehicle and asked if there were any drugs or weapons in the vehicle (TR. 8). Jackson stated he had been with some friends earlier in the day who may have been smoking marijuana, but that there were no drugs or weapons in the vehicle (TR. 8). Officer Acquazzino explained the officers would still search the occupants and the vehicle

based on the odor of marijuana, but if they did not find any contraband Jackson and his companion would be free to leave (TR. 8, 17).

Officer Acquazzino spoke to Jackson for about two to three minutes about getting out of the vehicle (TR. 9). However, Jackson refused to get out of the vehicle and became increasingly angry and defensive (TR. 9, 17-18). Officers Acquazzino and Wheatley then physically removed Jackson from the vehicle (TR. 9, 18). Jackson and the officers went to the ground and Jackson had his arms under his abdomen (TR. 9). Officers Acquazzino and Wheatley struggled with Jackson for approximately two minutes before gaining control of his arms and placing him in handcuffs (TR. 9-10). Jackson then requested an ambulance, stating he was hurt (TR. 10). Officer Acquazzino searched Jackson and found a cigarette box in Jackson's jacket pocket (TR. 10). The box contained what appeared to be crack cocaine (TR. 10). No marijuana was found on Jackson or in the vehicle (TR. 12). Officer Ceglar discovered a loaded silver gun, covered by a white rag, between the driver's and passenger's seats in the vehicle (TR. 19-20).

## LEGAL ANALYSIS

**A.   Traffic Stop**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "A traffic stop constitutes a seizure under the Fourth Amendment." *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008). "A traffic stop is reasonable under the Fourth Amendment if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007) (internal quotation omitted). A law enforcement officer's observation of a traffic violation provides probable cause to stop a vehicle. *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (**citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)); **see** *United States v. Walker*, 555 F.3d 716, 720 (8th Cir. 2009). An "objective reasonableness" standard is applied to determine whether a traffic stop was based on probable cause. *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). "An officer is justified in stopping a motorist when the officer objectively has a reasonable basis for believing that the driver has breached a traffic

law." *United States v. Mallari*, 334 F.3d 765, 766-67 (8th Cir. 2003). In contrast, "[e]ven if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an 'objectively reasonable one.'" *Herrera-Gonzalez*, 474 F.3d at 1109. "[T]he determination of objective reasonableness is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *Id.* (internal quotation omitted). In any event, the burden remains on the government "to prove that there was an objective basis for the stop." *United States v. Andrews*, 465 F.3d 346, 347 (8th Cir. 2006) (per curiam).

Nebraska law requires all vehicles operated on any street to display the proper number of license plates as required in the Motor Vehicle Registration Act, Neb. Rev. Stat. § 60-301 to 60-3,221. **See** Neb. Rev. Stat. § 60-399(1); **see also** Neb. Rev. Stat. § 60-332 (defining highway to include any street). Typically, two license plates are issued and must be displayed one on each the front and rear of a vehicle. **See** Neb. Rev. Stat. § 60-3,100(2). However, under limited circumstances a person may operate a vehicle without license plates when such vehicle displays appropriate "In Transit" stickers. **See** Neb. Rev. Stat. § 60-376. Specifically,

> Subject to all the provisions of law relating to motor vehicles and trailers not inconsistent with this section, any motor vehicle dealer . . . who desires to effect delivery of any motor vehicle or trailer bought or sold by him or her from the point where purchased or sold to points within or outside this state may, solely for the purpose of such delivery by himself or herself, his or her agent, or a bona fide purchaser, operate such motor vehicle or tow such trailer on the highways of this state without charge or registration of such motor vehicle or trailer. **A sticker shall be displayed on the front and rear windows or the rear side windows of such motor vehicle, . . . . On the sticker shall be plainly printed in black letters the words In Transit**. . . . Such stickers shall include a registration number, which registration number shall be different for each sticker or pair of stickers issued, and the contents of such sticker and the numbering system shall be as prescribed by the department. . . . **Such sticker shall allow such owner to operate the motor vehicle or tow such trailer for a period of thirty days** in order to effect proper registration of the new or used motor vehicle or trailer. . . .

4

> **Upon demand of proper authorities, there shall be presented by the person in charge of such motor vehicle or trailer, for examination, a duly executed bill of sale** therefor or other satisfactory evidence of the right of possession by such person of such motor vehicle or trailer.

Neb. Rev. Stat. § 60-376 (emphasis added).

Under both Nebraska law and Supreme Court precedent "a constitutional investigatory stop cannot be made solely to check a motorist's documentation when the vehicle is properly displaying in-transit tags." *Nebraska v. Bowers*, 548 N.W.2d 725, 731 (Neb. 1996) (**citing** *Nebraska v. Childs*, 495 N.W.2d 475, 479 (Neb. 1993), **relying on** *Delaware v. Prouse*, 440 U.S. 648 (1979)); **see** *Nebraska v. Draganescu*, 755 N.W.2d 57, 73 (Neb. 2008). However, it is constitutionally proper for a law enforcement officer to stop a vehicle when the officer reasonably believes the vehicle he was stopping did not have license plates or properly display in-transit stickers. *Nebraska v. Reiter*, 524 N.W.2d 575, 577-78 (Neb. App. 1994) (after traffic stop officer saw in-transit sticker which had been obscured by the darkly tinted windows); **see** *Nebraska v. Kling*, 599 N.W.2d 240, 243 (Neb. App. 1999) (traffic stop permissibly based on invalid hand-written in-transit sticker); **see also** *United States v. Clayborn*, 339 F.3d 700, 702 (8th Cir. 2003) (objectively reasonable, although mistaken, belief that a traffic violation had occurred justified traffic stop).

Jackson asserts Officer Acquazzino had neither reasonable suspicion nor probable cause to effectuate the traffic stop on October 1, 2008. There is no evidence before the court to suggest Officer Acquazzino initiated the traffic stop for investigative purposes unrelated to a traffic violation. Rather, the sole justification given is a traffic violation, specifically operating a vehicle without license plates. Jackson does not dispute there were no license plates on the Caprice. Because Nebraska law has an exception to the license plate requirement, the court's inquiry does not stop there.

When Officer Acquazzino initially observed the vehicle he did not see license plates or an in-transit sticker on the vehicle. The court finds Officer Acquazzino initiated the traffic stop based on his belief the vehicle was in violation of the licensing requirements of Nebraska law. Although the officer later determined the vehicle had an in-transit sticker

in the back, the court finds Officer Acquazzino's initial belief was reasonable. Based on Officer Acquazzino's observation, he had probable cause to stop the driver of the Caprice.

**B.    Search**

Jackson asserts the objective evidence does not support Officer Acquazzino's testimony about the presence of the odor of marijuana emanating from the Caprice. Additionally, Jackson argues the officer's statements about smelling marijuana does not provide probable cause to search. For these reasons, Jackson contends the evidence discovered by officers on October 1, 2008, should be suppressed.

Contemporaneous with a valid traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." *Untied States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (**quoting** *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam)). In fact, a police officer may detain the occupants while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008); **see also** *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Additionally, the police officer may inquire about the driver and other occupant's destination, purpose of the trip and whether the police officer may search the vehicle. *Peralez*, 526 F.3d at 1119; *United States v. Gill*, 513 F.3d 836, 845 (8th Cir. 2008).

"If the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." *United States v. Ward*, 484 F.3d 1059, 1061 (8th Cir. 2007) (**quoting** *United States v. Johnson*, 58 F.3d 356, 357 (8th Cir. 1995)). Specifically, an officer may take further action as necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, perceptions made the police officer regarding illegal drug use, and divergent information from the passengers. *United States v. $404,905.00*, 182 F.3d 296, 647 (8th Cir. 1999). In any event, the scope and length of any investigation must be reasonable. *United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008). "The investigative methods employed should be the least intrusive means reasonably available

to verify or dispel the officer's suspicion in a short period of time." *United States v. Ward*, 484 F.3d 1059, 1062 (8th Cir. 2007) (**quoting** *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir.1994) (en banc)).

Jackson does not challenge the length of the traffic stop. In any event, the court finds the length of the stop was directly related to Officer Acquazzino's performance of routine tasks and waiting for additional officers. Furthermore, immediately upon making contact with Jackson, Officer Acquazzino identified the odor of marijuana emanating from the Caprice. Accordingly, Officer Acquazzino immediately became suspicious of criminal activity tangential to the purpose of the traffic stop, which permissibly expanded the scope of the stop. The court credits Officer Acquazzino's testimony in this regard. Additionally, although no evidence of marijuana use was discovered on Jackson or in the Caprice, Jackson's own statements to Officer Acquazzino at the scene corroborate the officer's observation. Specifically, Jackson acknowledged the odor of marijuana and provided an explanation for its presence, rather than denying the possibility of a marijuana odor in the vehicle.

"Police may search a car without a warrant if they have probable cause to believe that the car contains contraband or evidence." *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999). Officer Acquazzino detected the odor of raw marijuana coming from the vehicle. That alone justifies the search of the Caprice. **See** *United States v. Jennings*, No. 06-4109, 2007 WL 2142260 (8th Cir. July 27, 2007) (per curiam) (unpublished); *United States v. Clayborn*, 339 F.3d 700, 702 (8th Cir. 2003) (holding that the smell of marijuana gave the police probable cause to search vehicle); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (same); *United States v. Caves*, 890 F.2d 87, 90-91 (8th Cir. 1989). Jackson challenges the detection of marijuana by Officer Acquazzino. The court observed Officer Acquazzino's demeanor, weighed his law enforcement experiences to include detection and arrest in cases where marijuana was found, and credits his testimony that he smelled marijuana coming from the vehicle. Based on the detection of marijuana, the court finds Officer Acquazzino had probable cause to conduct a warrantless search of the vehicle. For the reasons stated above, the motion to suppress should be denied in its entirety.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Royal Jackson's motion to suppress (Filing No. 25) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 30th day of March, 2008.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge